**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALL TERMINAL SERVICES, LLC D/B/A | ) | |
| CONGLOBAL TECHNOLOGIES, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ROBOFLOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff ALL TERMINAL SERVICES, LLC D/B/A CONGLOBAL TECHNOLOGIES ("ConGlobal"), by and through their undersigned counsel, hereby files this Complaint for Patent Infringement against Defendant ROBOFLOW, INC. ("Roboflow"), respectfully showing this Honorable Court as follows:

**NATURE OF THE ACTION**

1.      This is an action for infringement of United States Patent Nos. 12,020,148 (the "'148 Patent"), 12,217,183 (the "'183 Patent"), and 12,254,439 (the "'439 Patent") (collectively, the "Asserted Patents") owned by ConGlobal and arising under the patent laws of the United States, Title 35, United States Code, Section 100 *et seq*.

2.      The Asserted Patents generally claim systems and methods managing rail yard and intermodal yard inventory using artificial intelligence, including image recognition, optical character recognition (OCR), and machine learning algorithms. The patented technology covers the automated identification, classification, and tracking of yard-based assets such as containers, chassis, and railcars using visual data.

3.      The containers, chassis, and intermodal equipment tracked by Roboflow's system are the same types of yard assets covered by the Asserted Patents, which discloses systems for

managing yard inventory, including container identification, classification, and location using AI-driven image recognition. Roboflow's system performs these functions in substantially the same operational environment and through substantially similar methods.

4.      Roboflow has developed, marketed, and offered for sale in the United States a Yard Management System, Workflow system and Roboflow Interference (and other similar interrelated products) (the "Accused Systems"), that, upon information and belief, practices one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents, or indirectly by inducing infringement.

5.      ConGlobal has complied with the marking and notice requirements of 35 U.S.C. § 287.

## PARTIES, JURISDICTION AND VENUE

6.      ConGlobal is a domestic limited liability company organized and existing under the laws of the State of Illinois, having a principal place of business at 999 Oakmont Plaza Dr., Suite 340, Westmont, Illinois 60556.

7.      All Terminal Services, LLC d/b/a ConGlobal Technologies is a wholly-owned subsidiary of ConGlobal (as defined above), an industry-leader in supply chain management systems, which includes a suite of technological solutions for yard management, supply chain operations, warehouse management, and surrounding technologies.

8.      Roboflow is a corporation organized and existing under the laws of the State of Delaware and may be served via its registered agent, Registered Agent Solutions, Inc., 838 Walker Road Suite 21-2, Dover, Delaware 19904. On information and belief, Roboflow is in good standing as a domestic corporation in Delaware. Attached as **Exhibit A** is a search status report indicating

Roboflow's current good corporate standing in Delaware retrieved from the Secretary of State of Delaware's website.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Roboflow because, among other things, Defendant has purposely availed itself of the rights and benefits of the laws of Delaware by engaging in systematic and continuous contacts with the state such that it should reasonably anticipate being haled into court here. For example, Defendant is organized and exists under the laws of the State of Delaware and is registered to conduct business in Delaware.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

12.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

13.     On June 25, 2024, the U.S. Patent and Trademark Office duly and legally issued the '148 Patent, entitled "Control System for Railway Yard and Related Methods." A true and correct copy of the '148 Patent is attached hereto as **Exhibit B**.

14.     On February 4, 2025, the U.S. Patent and Trademark Office duly and legally issued the '183 Patent, entitled "Control System for Railway Yard and Related Methods." A true and correct copy of the '183 Patent is attached hereto as **Exhibit C**.

15.     On March 18, 2025, the U.S. Patent and Trademark Office duly and legally issued the '439 Patent, entitled "Control System for Container Terminal and Related Methods." A true and correct copy of the '439 Patent is attached hereto as **Exhibit D**.

16.     ConGlobal is the owner of the entire right, title, and interest in the Asserted Patents by assignment, and possesses the right to sue for and obtain equitable relief and damages for infringement of the Asserted Patents.

17.     The Asserted Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

18.     The claims of the Asserted Patents carry a presumption of validity under 35 U.S.C. § 282(a) and are enforceable.

19.     The Asserted Patents disclose and claim systems and methods for managing shipping assets in an inventory management facility, such as an intermodal yard and/or railway yard, using image recognition, optical character recognition (OCR), and machine learning algorithms.

20.     The patented technology includes systems for capturing visual data from yard assets using mobile or stationary imaging equipment, processing that data to identify alphanumeric identifiers, logos, and classifications, and integrating this analysis into yard management operations.

21.     These systems constitute significantly more than any abstract idea by incorporating multiple components in a novel, non-obvious combination that confers a technological advancement by utilizing cameras, computing components, and algorithms incorporating machine learning capability to more accurately and efficiently identify containers than was capable in the past.

22.     Historically, it was very difficult, if not impossible, to automatically identify, track, and manage assets in yard systems using OCR devices because shipping assets and containers are often dirty, damaged, miscolored, etc., which would lead to inaccurate or insufficient imaging that

would not have been accurate or reliable enough to track those particular assets. The Asserted Patents solved this problem by arranging and operating the physical components in a particular manner, coupled with the use of specialized algorithms along with machine learning to accurately and efficiently identify shipping assets in real time as described in the Asserted Patents.

23.     As acknowledged by the United States Patent and Trademark Office, the Asserted Patents couple algorithms and machine learning models "in combination with the multiple hardware added in communication with the server," which was "significantly more than the abstract idea" and "transform an abstract  idea into patent eligible" subject matter.  The limitations of the claims of the Asserted Patents "as a whole effect an improvement to another technology or technical field" and the "limitations in combination provide meaningful limitations beyond generally linking the use of the abstract idea to a particular technological environment," and therefore, "recite patent eligible subject matter" and "are deemed to be statutory" by the United States Patent and Trademark Office.

24.     Indeed, as demonstrated by the disclosure contained in the Asserted Patents along with their claims and as acknowledged by the United States Patent and Trademark Office, the claims of the Asserted Patents are directed to significantly more than an abstract idea.

25.     The Asserted Patents are also not directed to mere well-known, routine, or conventional activity.

## ROBOFLOW'S INFRINGING CONDUCT

26.     The Accused Systems, specifically the Yard Management System, use computer vision, OCR and machine learning to track intermodal and rail yard inventory.

27.     The Accused Systems, specifically the Yard Management System, deploy cameras on yard vehicles to collect image data, use trained machine learning models and OCR to detect asset identifiers and classifications, and provides real-time visibility into asset status and location.

28.     Roboflow allows users to train and deploy custom AI models using its platform. These AI models are optimized for detecting container numbers, chassis IDs, logos, and other relevant yard asset information. The resulting data is then integrated with logistics and yard management systems, enabling automated tracking, classification, and digital record-keeping of yard assets in real time.

29.     Roboflow's system performs key functions disclosed and claimed in the Asserted Patents, including image capture, visual processing using OCR and machine learning, classification of assets, and integration with operational yard systems.

30.     On information and belief, the Accused Systems incorporate or are used in combination with RCLs and/or other vehicles, using the asset tracking and classification outcomes along with the automated image processing and AI techniques of the Accused Systems.

31.     The Accused Systems are in use at yards, terminals, and/or other inventory management facilities that manage and control yard assets, such as shipping containers, railcars, terminal tractors, and/or RCLs.

32.     The Accused Systems are used and operated at Roboflow's direction, control, and/or guidance at yards and/or other inventory management facilities to position, inventory, track, and manage containers and/or other shipping assets, including railcars and/or vehicles such as RCLs and/or terminal tractors such as hostler trucks, via OCR imaging of the shipping assets and other tracking aspects of the Asserted Patents.

33.     Roboflow's public website describes and depicts the Accused Systems as passively collecting container location data from cameras mounted on hostler trucks. The systems capture continuous image streams and process them using computer vision, OCR, and machine learning to extract information such as chassis ID, container ID, and logos—functionality that mirrors and overlaps with the technology claimed in the Asserted Patents.

34.     A screenshot from Roboflow's website is included below. The image illustrates Roboflow's Yard Management System actively identifying intermodal containers in a yard environment using visual object detection and OCR. In the example shown, the system detects and labels asset attributes including container ID, company branding, and asset type, demonstrating the automated classification, extraction, and tagging of container data—features that are central to the claims of the Asserted Patents.



35.     Roboflow's website can be accessed at https://roboflow.com/.

36.     Roboflow's website also provides publicly available descriptions and instructional materials that detail how to implement and use the Accused Systems in rail yards.



37.     Specifically, in a press release from Roboflow's website, at least one rail customer listed on Roboflow's website explains that Roboflow's computer vision, coupled with "labeling and dataset optimization" and "hosted model training," enables that customer to "have real-time inventory in their intermodal yards." A true and correct copy of that press release is attached as **Exhibit E**.

38.     Further, Roboflow's website includes a pre-trained model available to users as part of the Accused Systems for "Railroad Car Detection," which captures railcar image data:

 

https://universe.roboflow.com/innopolis-university-aurlu/railroad-car-detection

39.     Roboflow's website makes other mention of the use of the Accused Systems with railcars in yards.

40.     In yards, Roboflow is also using its imaging technology on vehicles equipped with a geolocation device, a wireless transceiver, and a controller to capture images of containers for imaging, tracking, and inventory management as claimed by the Asserted Patents.

41.     These materials demonstrate how Roboflow's products are intended to be used in conjunction with one another in a manner that directly infringes, or induces others to infringe, one or more claims of the Asserted Patents.

42.     In addition, or in the alternative, to the extent that Roboflow is not directly infringing the claims of the Asserted Patents, Roboflow is directing downstream users to use the Accused Systems with specific intent for those downstream users to directly infringe the Asserted Patents.

43.     In addition, or in the alternative, the Accused Systems are specifically adapted for use in yard management via imaging and data modeling used in the Accused Systems that instruct users how to use those systems for tracking, analyzing, and managing inventory. While Roboflow has other products and systems, Roboflow's Accused Systems are specifically tailored as a Yard Management System, which infringes the Asserted Patents.

44.     The Accused Systems were designed for their specific use and functionality in yard management using the tools and processes described by Roboflow. The Accused Systems are not a staple article of commerce and do not have substantial non-infringing uses.

45.     Upon information and belief, the Accused Systems are used, or have been used, offered for sale, or sold for use, in rail yards containing multiple tracks, consistent with the environments described and claimed in the Asserted Patents.

## COUNT I: DIRECT INFRINGEMENT OF THE '148 PATENT

46.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

47.     Roboflow has directly infringed and continues to directly infringe at least one of the claims of the '148 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell within the United States, without authority or license, systems and methods that practice each and every element of one or more of those claims.

48.     By way of example, the Accused Systems directly infringe independent Claim 1 of the '148 Patent. Claim 1 is directed to a "control system for a railway yard" that uses image-based data collection to create a database associated with sets of railcars. Specifically, Claim 1 requires: (i) railyard sensors configured to generate sensor data of the yard assets; (ii) a server in

communication with those sensors; and (iii) a database generated from that data, containing values such as railcar type, logo image, and classification.

49.     Roboflow's Accused Systems, including its Yard Management System, satisfy these limitations.

50.     As demonstrated by its website and documentation along with knowledge obtained by ConGlobal, Roboflow's systems: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; and (3) organize this information into a structured digital database for use in yard operations. These functionalities mirror and implement the elements of Claim 1 and therefore constitute direct infringement under 35 U.S.C. § 271(a).

51.     Roboflow has been, and continues to be, directly infringing at least one claim of the Asserted Patents, in violation of 35 U.S.C. § 271(a), by advertising, marketing, using, offering for use, offering for sale, and/or selling the Accused Systems in the United States.

52.     Roboflow also provides instructions, promotional materials, technical documentation, and support services that facilitate, encourage, and enable its customers to use the Accused Systems in a manner that practices one or more claims of the '148 Patent.

53.     As a direct and proximate result of Roboflow's infringement of the '148 Patent, ConGlobal has suffered, and will continue to suffer, including lost business opportunities and competitive market share, along with damages in an amount to be proven at trial, but no less than a reasonable royalty.

## COUNT II: DIRECT INFRINGEMENT OF THE '183 PATENT

54.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

55.     Roboflow has directly infringed and continues to directly infringe at least one of the claims of the '183 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell within the United States, without authority or license, systems and methods that practice each and every element of one or more of those claims.

56.     By way of example, the Accused Systems directly infringe independent Claim 16 of the '183 Patent. Claim 16 is directed to a "server for controlling a railway yard" that uses image-based data collection to create a database associated with sets of railcars. Specifically, Claim 16 requires: (i) one or more processors comprising one or more algorithms that: (a) generates a database associated with railcars and their data; (b) selectively controls the one or more RCLs based on sensor data; (c) uses sensors configured to generate railyard image data; and (d) uses the railyard image data to identify each railcar.

57.     Roboflow's Accused Systems, including its Yard Management System, satisfy these limitations.

58.     As demonstrated by its website and documentation along with knowledge obtained by ConGlobal, Roboflow's systems operate a server to: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; and (3) organize this information into a structured digital database for use in yard operations. These functionalities mirror and implement the elements of Claim 16 and therefore constitute direct infringement under 35 U.S.C. § 271(a).

59.     Roboflow has been, and continues to be, directly infringing at least one claim of the '183 Patent, in violation of 35 U.S.C. § 271(a), by advertising, marketing, using, offering for use, offering for sale, and/or selling the Accused Systems in the United States.

60.     Roboflow also provides instructions, promotional materials, technical documentation, and support services that facilitate, encourage, and enable its customers to use the Accused Systems in a manner that practices one or more claims of the '183 Patent.

61.     As a direct and proximate result of Roboflow's infringement of the '183 Patent, ConGlobal has suffered, and will continue to suffer, including lost business opportunities and competitive market share, along with damages in an amount to be proven at trial, but no less than a reasonable royalty.

## COUNT III: DIRECT INFRINGEMENT OF THE '439 PATENT

62.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

63.     Roboflow has directly infringed and continues to directly infringe at least one of the claims of the '439 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell within the United States, without authority or license, systems and methods that practice each and every element of one or more of those claims.

64.     By way of example, the Accused Systems directly infringe independent Claim 1 of the '439 Patent. Claim 1 is directed to a "control system for an inventory management facility" that uses image-based data collection to create a database associated with sets of shipping assets. Specifically, Claim 1 requires: (i) one or more shipping assets in the inventory management facility; (ii) sensors that generate sensor data in communication with a server; (iii) generating a database associated with the sensor data that is used to track location and/or movement of the shipping assets in the inventory management facility; (iv) uses sensors configured to generate image data used to identify a test string of the shipping asset, a color of the shipping asset, logo

image data; (v) uses machine learning to track the shipping asset based on the image data; and (vi) uses a vehicle equipped with a geolocation device, a wireless transceiver, and a controller.

65.    Roboflow's Accused Systems, including its Yard Management System, satisfy these limitations.

66.    As demonstrated by its website and documentation along with knowledge obtained by ConGlobal, Roboflow's systems: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; (3) organize this information into a structured digital database for use in yard operations; and (4) utilizes vehicles as specified in the claims of the '439 Patent. These functionalities mirror and implement the elements of Claim 1 and therefore constitute direct infringement under 35 U.S.C. § 271(a).

67.    Roboflow has been, and continues to be, directly infringing at least one claim of the '439 Patent, in violation of 35 U.S.C. § 271(a), by advertising, marketing, using, offering for use, offering for sale, and/or selling the Accused Systems in the United States.

68.    Roboflow also provides instructions, promotional materials, technical documentation, and support services that facilitate, encourage, and enable its customers to use the Accused Systems in a manner that practices one or more claims of the '439 Patent.

69.    As a direct and proximate result of Roboflow's infringement of the '439 Patent, ConGlobal has suffered, and will continue to suffer, including lost business opportunities and competitive market share, along with damages in an amount to be proven at trial, but no less than a reasonable royalty.

## COUNT IV: INDUCED INFRINGEMENT OF THE '148 PATENT

70.    ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

71.    Roboflow has actively, knowingly, and intentionally induced, and continues to induce, infringement of one or more claims of the '148 Patent in violation of 35 U.S.C. § 271(b), by encouraging, instructing, and assisting others—including customers, integrators, and end users—to directly infringe on the '148 Patent through their use of the Accused Systems.

72.    Roboflow provides written instructions, tutorials, source code, training materials, and other technical documentation that guide customers and end users on how to use and operate the Accused Systems in a manner that directly infringes at least one of the claims of the '148 Patent. Roboflow has done so with actual knowledge of the '148 Patent, or with willful blindness to the fact that such actions would result in direct infringement.

73.    Upon information and belief, Roboflow intended for its customers to use the Accused Systems in a way that infringes the '148 Patent and was aware that its conduct would induce infringement. A reasonable opportunity for discovery will likely provide further evidentiary support for Roboflow's knowledge and specific intent.

74.    By way of example, the Accused Systems induce infringement of independent Claim 1 of the '148 Patent. Claim 1 is directed to a "control system for a railway yard" that uses image-based data collection to create a database associated with sets of railcars. Specifically, Claim 1 requires: (i) railyard sensors configured to generate sensor data of the yard assets; (ii) a server in communication with those sensors; and (iii) a database generated from that data, containing values such as railcar type, logo image, and classification.

75.     Roboflow's Accused Systems, including its Yard Management System, are provided to downstream users of the Accused Systems with the intent to, or willful blindness of, infringement.

76.     Roboflow's systems, as demonstrated by its website and documentation along with knowledge obtained by ConGlobal, confirm that its systems direct users to: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; and (3) organize this information into a structured digital database for use in yard operations. These functionalities mirror and implement the elements of Claim 1 and therefore constitute direct infringement under 35 U.S.C. § 271(b)

77.     As a direct and proximate result of Roboflow's acts of induced infringement, ConGlobal has suffered, and will continue to suffer, irreparable harm, including lost market share and competitive disadvantage, as well as damages in an amount to be determined at trial, but no less than a reasonable royalty.

## COUNT V: INDUCED INFRINGEMENT OF THE '183 PATENT

78.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

79.     Roboflow has actively, knowingly, and intentionally induced, and continues to induce, infringement of one or more claims of the '183 Patent in violation of 35 U.S.C. § 271(b), by encouraging, instructing, and assisting others—including customers, integrators, and end users—to directly infringe on the '183 Patent through their use of the Accused Systems.

80.     Roboflow provides written instructions, tutorials, source code, training materials, and other technical documentation that guide customers and end users on how to use and operate the Accused Systems in a manner that directly infringes at least one of the claims of the '183

Patent. Roboflow has done so with actual knowledge of the '183 Patent, or with willful blindness to the fact that such actions would result in direct infringement.

81.    Upon information and belief, Roboflow intended for its customers to use the Accused Systems in a way that infringes the '183 Patent and was aware that its conduct would induce infringement. A reasonable opportunity for discovery will likely provide further evidentiary support for Roboflow's knowledge and specific intent.

82.    By way of example, the Accused Systems induce infringement independent Claim 16 of the '183 Patent. Claim 16 is directed to a "server for controlling a railway yard" that uses image-based data collection to create a database associated with sets of railcars. Specifically, Claim 16 requires: (i) one or more processors comprising one or more algorithms that: (a) generates a database associated with railcars and their data; (b) selectively controls the one or more RCLs based on sensor data; (c) uses sensors configured to generate railyard image data; and (d) uses the railyard image data to identify each railcar.

83.    Roboflow's systems, as demonstrated by its website and documentation along with knowledge obtained by ConGlobal, confirm that its systems direct users to: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; and (3) organize this information into a structured digital database for use in yard operations, all of which operate or are used in conjunction with a server as specified in the claims. These functionalities mirror and implement the elements of Claim 16 and therefore constitute direct infringement under 35 U.S.C. § 271(b).

84.    As a direct and proximate result of Roboflow's acts of induced infringement, ConGlobal has suffered, and will continue to suffer, irreparable harm, including lost market share

and competitive disadvantage, as well as damages in an amount to be determined at trial, but no less than a reasonable royalty.

## COUNT VI: INDUCED INFRINGEMENT OF THE '439 PATENT

85.    ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

86.    Roboflow has actively, knowingly, and intentionally induced, and continues to induce, infringement of one or more claims of the '439 Patent in violation of 35 U.S.C. § 271(b), by encouraging, instructing, and assisting others—including customers, integrators, and end users—to directly infringe on the '439 Patent through their use of the Accused Systems.

87.    Roboflow provides written instructions, tutorials, source code, training materials, and other technical documentation that guide customers and end users on how to use and operate the Accused Systems in a manner that directly infringes at least one of the claims of the '439 Patent. Roboflow has done so with actual knowledge of the '439 Patent, or with willful blindness to the fact that such actions would result in direct infringement.

88.    Upon information and belief, Roboflow intended for its customers to use the Accused Systems in a way that infringes the '439 Patent and was aware that its conduct would induce infringement. A reasonable opportunity for discovery will likely provide further evidentiary support for Roboflow's knowledge and specific intent.

89.    By way of example, the Accused Systems induce infringe independent Claim 1 of the '439 Patent. Specifically, Claim 1 requires: (i) one or more shipping assets in the inventory management facility; (ii) sensors that generate sensor data in communication with a server; (iii) generating a database associated with the sensor data that is used to track location and/or movement of the shipping assets in the inventory management facility; (iv) uses sensors configured

to generate image data used to identify a test string of the shipping asset, a color of the shipping asset, logo image data; (v) uses machine learning to track the shipping asset based on the image data; (vi) uses a vehicle equipped with a geolocation device, a wireless transceiver, and a controller.

90.    Roboflow's systems, as demonstrated by its website and documentation along with knowledge obtained by ConGlobal, confirm that its systems direct users to: (1) use vehicle-mounted cameras to collect image data from yard assets; (2) apply OCR and machine learning to extract container numbers, logos, and chassis classifications; and (3) organize this information into a structured digital database for use in yard operations. These functionalities mirror and implement the elements of Claim 1 and therefore constitute direct infringement under 35 U.S.C. § 271(b).

91.    As a direct and proximate result of Roboflow's acts of induced infringement, ConGlobal has suffered, and will continue to suffer, irreparable harm, including lost market share and competitive disadvantage, as well as damages in an amount to be determined at trial, but no less than a reasonable royalty.

## COUNT VII: CONTRIBUTORY INFRINGEMENT OF THE '148 PATENT

92.    ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

93.    Roboflow has been, and currently is, contributorily infringing at least one of the claims of the '148 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process of the '148 Patent, by instructing customers or end users to use the Accused Systems, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of such patent.

94.     The Accused Systems are not a staple article or commodity of commerce suitable for substantial non-infringing use, and Roboflow is thus liable as an infringer.

95.     For example, Claim 16 of the '148 Patent covers a "method for operating a control system for a railway yard with a plurality of railroad tracks," which constitutes a patented process under 35 U.S.C. § 271(c).

96.     Roboflow provides instructions, tutorials, and materials (e.g., source code) to its customers and end users on how to use and operate the Accused Systems, which constitutes an apparatus for use in practicing a patent process, thereby contributorily infringing the '148 Patent.

97.     A reasonable opportunity for discovery will likely provide further evidentiary support for such contributory infringement.

98.     As a consequence of Roboflow's contributory infringement of the Asserted Patents, ConGlobal has suffered, and will continue to suffer, irreparable harm along with damages in an amount not yet determined, but no less than a reasonable royalty.

## COUNT VIII: CONTRIBUTORY INFRINGEMENT OF THE '183 PATENT

99.     ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

100.     Roboflow has been, and currently is, contributorily infringing at least one of the claims of the '183 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process of the '183 Patent, by instructing customers or end users to use the Accused Systems, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of such patent.

101.    The Accused Systems are not a staple article or commodity of commerce suitable for substantial non-infringing use, and Roboflow is thus liable as an infringer.

102.    For example, Claim 29 of the '183 Patent covers a "method for operating a control system for a railway yard," which constitutes a patented process under 35 U.S.C. § 271(c).

103.    Roboflow provides instructions, tutorials, and materials (e.g., source code) to its customers and end users on how to use and operate the Accused Systems, which constitutes an apparatus for use in practicing a patent process, thereby contributorily infringing the '183 Patent.

104.    A reasonable opportunity for discovery will likely provide further evidentiary support for such contributory infringement.

105.    As a consequence of Roboflow's contributory infringement of the Asserted Patents, ConGlobal has suffered, and will continue to suffer, irreparable harm along with damages in an amount not yet determined, but no less than a reasonable royalty.

## COUNT IX: CONTRIBUTORY INFRINGEMENT OF THE '439 PATENT

106.    ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

107.    Roboflow has been, and currently is, contributorily infringing at least one of the claims of the '439 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process of the '439 Patent, by instructing customers or end users to use the Accused Systems, which constitute a material part of the inventions, knowing the same to be especially made or especially adapted for use in an infringement of such patent.

108.    The Accused Systems are not a staple article or commodity of commerce suitable for substantial non-infringing use, and Roboflow is thus liable as an infringer.

109.    For example, Claim 16 of the '439 Patent covers a "method for operating a control system for an inventory management facility," which constitutes a patented process under 35 U.S.C. § 271(c).

110.    Roboflow provides instructions, tutorials, and materials (e.g., source code) to its customers and end users on how to use and operate the Accused Systems, which constitutes an apparatus for use in practicing a patent process, thereby contributorily infringing the '439 Patent.

111.    A reasonable opportunity for discovery will likely provide further evidentiary support for such contributory infringement.

112.    As a consequence of Roboflow's contributory infringement of the Asserted Patents, ConGlobal has suffered, and will continue to suffer, irreparable harm along with damages in an amount not yet determined, but no less than a reasonable royalty.

## COUNT IV: WILLFUL INFRINGEMENT OF THE ASSERTED PATENTS

113.    ConGlobal incorporates the foregoing paragraphs as if the same were restated verbatim herein.

114.    Upon information and belief, Roboflow had actual knowledge of the Asserted Patents on or around their issuance, and in any event no later than December 4, 2024, when it received written notice from ConGlobal via a letter dated December 3, 2024 (the "December Letter").

115.    The December Letter, a copy of which is attached as **Exhibit F**, included a copy of the '148 Patent, identified the Accused Systems, and placed Roboflow on notice of Roboflow's potential for infringement.

116.    Roboflow responded to ConGlobal's letter but failed to provide any detailed explanation or legal basis demonstrating that the Accused Systems do not infringe. Instead,

Roboflow's response relied on generalized denials and assertions that are contradicted by its own publicly available marketing and technical materials, as well as by ConGlobal's own personal knowledge regarding the use of, or intended use of, the Accused Systems in rail yards—including instances where they have replaced or displaced ConGlobal's own patented systems. A true and correct copy of Roboflow's response is attached hereto as **Exhibit G**.

117.    ConGlobal offers for sale and sells products that practice the inventions claimed in the Asserted Patents. ConGlobal publicly announced the issuance of the '148 Patent in a press release dated June 25, 2024, and marks its patented products in accordance with 35 U.S.C. § 287(a), thereby providing constructive notice of its patent rights, including to Roboflow.

118.    Upon information and belief, Roboflow has marketed, sold, or deployed its Accused Systems to one or more customers that previously used or currently use ConGlobal's patented systems or services.

119.    Upon information and belief, the Accused Systems are in active use in rail yards or terminals, or have been offered for use in such environments, in a manner that directly infringes one or more claims of the Asserted Patents.

120.    Despite having knowledge of the Asserted Patents, Roboflow has not ceased its infringing conduct, including the marketing, offering for sale, and support of the Accused Systems.

121.    Based on the foregoing, Roboflow knew or should have known of the Asserted Patents prior to the filing of this Complaint and continued to infringe the Asserted Patents thereafter with knowledge or reckless disregard of the patents and ConGlobal's rights. A reasonable opportunity for discovery will likely provide further evidentiary support for Roboflow's knowledge, intent, and continued willful conduct.

122.    At a minimum, Roboflow had actual knowledge of the '148 Patent as of December 4, 2024, yet it has continued to promote and deploy the Accused Systems in a manner that infringes the Asserted Patents, without taking any meaningful steps to avoid infringement.

123.    Roboflow's continued infringement despite actual notice, constitutes willful infringement under 35 U.S.C. § 284, justifying an award of enhanced damages up to three times the amount found or assessed at trial.

## PRAYER FOR RELIEF

WHEREFORE, ConGlobal requests that this Court grant the following relief:

1.    A judgment that Roboflow has directly infringed one or more claims of the Asserted Patents, or in the alternative induced infringement of one or more claims of the Asserted Patents;

2.    An order preliminarily and permanently restraining and enjoining Roboflow, its officers, agents, attorneys and employees, and those acting in privity or concert with Roboflow, from engaging in the manufacture, use, offer for sale or sale within the United States, or importation into the United States, of the Accused Systems until after the expiration date of the Asserted Patents pursuant to 35 U.S.C. § 283;

3.    Damages or other monetary relief to ConGlobal, including but not limited to treble damages associated with Roboflow's willful infringement, lost profits and/or a reasonable royalty;

4.    Costs and reasonable attorneys' fees relating to this action pursuant to 35 U.S.C. § 285; and

5.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ConGlobal demands a trial by jury on all issues that are so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Matthew D. Zapadka
Kevin M. Bell
Andrew K. Beverina
John J. Dresch
April Meeks
ARNALL GOLDEN GREGORY LLP
2100 Pennsylvania Avenue NW, Suite 350S,
Washington, D.C. 20037
Tel: (202) 677-4030

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew M. Moshos (#6685)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    amoshos@potteranderson.com

Dated: April 18, 2025
12182242 / 25032.00001

*Attorneys for Plaintiff All Terminal Services,*
*LLC d/b/a ConGlobal Technologies*